IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SHERI LYNN GIBSON HEGAR

      Plaintiff,

                                6:14-CV-00455-PK

                                FINDINGS AND

v.                              RECOMMENDATION

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

_____

PAPAK, Magistrate Judge:

      Plaintiff Sheri Lynn Gibson Hegar filed this action March 26, 2010, seeking judicial

review of the Commissioner of Social Security's final decision denying her application for

supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act").

This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Hegar argues that by erroneously rejecting medical evidence and erroneously rejecting her testimony regarding the extent of her impairments, the Commissioner failed properly to assess her residual functional capacity after completing step three of the five-step sequential process for analyzing a Social Security claimant's entitlement to benefits, and for that reason erred by finding Hegar capable of performing work as a table worker or hand stuffer at step five of the process.

I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's decision should be reversed and this case should be remanded for further administrative proceedings.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See*

*Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b).  Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 416.920(a)(4)(ii).  An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(c).  The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141.  If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled.  *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c).  Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).  If the claimant's impairments are equivalent to one of the impairments enumerated

in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See*
*Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments,
between the third and the fourth steps the ALJ is required to assess the claimant's residual
functional capacity ("RFC"), based on all the relevant medical and other evidence in the
claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's
capacity to perform sustained, work-related physical and/or mental activities on a regular and
continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R.
§ 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the
claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §
416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can
still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*,
482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(a)(4)(iv), 416.920(f). In the
event the claimant is no longer capable of performing his or her past relevant work, the
evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first
time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the
claimant's age, education, and work experience to determine whether a person with those
characteristics and RFC could perform any jobs that exist in significant numbers in the national

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an
equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

Page 4 - FINDINGS AND RECOMMENDATION

economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence

Page 5 - FINDINGS AND RECOMMENDATION

of record.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Hegar was 48 at the time of the hearing.  Tr. 47.[3]  She did not finish high school, and has received no subsequent formal education or vocational training.  *Id.*  According to the evidence of record, prior to her claimed disability onset date of October 15, 2008, Hegar had no substantial gainful activity.

### A.  The Medical Record

On June 6, 2008, Hegar saw Robert Oksenholt, D.O. to follow up on an emergency room visit for a headache.  Hegar reported headaches three to four times per week.  Dr. Oksenholt noted normal strength and gait, and prescribed imitrex and Timolol.  Tr. 314.  On June 17, Plaintiff returned to Dr. Oksenholt reporting she had had only one "slight headache" that resolved with Ultram.  Tr. 311.  By September 2008, Hegar reported her migraines were "almost resolved" with propranolol and imitrex.  Tr. 309.  She had intermittent pain in her knees and neck.  A CT scan of the neck showed degenerative disc disease and arthritis.

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 12.

In January 2009, Hegar reported stomach pain and was prescribed Ultram. Tr. 308. In March 2009 Hegar reported bilateral knee pain. Tr. 305. She had fatigue, and the doctor noted she had a somewhat "poor memory and historian." *Id.* She received injections of Kenalog and Decadron for her arthritis. She was counseled on diet and exercise and advised to stop smoking tobacco.

In July 2009 Hegar reported neck pain radiating to her left hand. Tr. 303. MRI's of the brain and cervical spine showed an impingement of the C7 nerve root and a small number of white matter abnormalities in deep and periventricular regions of the brain. Tr. 242. On July 14, Plaintiff reported fatigue and muscle weakness. Tr. 301. She was counseled about diet and exercise and referred to a neurologist. Tr. 302.

On August 7, 2009, Hegar saw neurologist Rebecca Reiser, M.D. regarding a possible diagnosis of multiple sclerosis. Tr. 241. Plaintiff reported neck pain since a motor vehicle accident 20 years ago, with some weakness of the right arm. She reported headaches about once a week. Dr. Reiser stated her "symptoms are not consistent with a history of multiple sclerosis and although her brain MRI has some white matter lesions, I think they are more likely to be from small vessel disease versus multiple sclerosis." Tr. 242. Dr. Reiser prescribed Topamax for headaches.

On August 19, Dr. Oksenholt noted he did "not suspect MS," Hegar's depression was better, and he referred her for follow up in neurology. Tr. 299. On September 10, an electromyogram (EMG) of Hegar's right upper extremity was consistent with carpal tunnel syndrome. Tr. 292. Hegar declined a carpal tunnel release. *Id.* On September 17, Dr.

Oksenholt counseled Hegar about diet, exercise, and weight loss. On October 8, Stephen Shea, D.O., evaluated complaints of numbness and weakness in Hegar's hands. Tr. 291.

On January 27, 2010, Hegar reported a recent headache and left face numbness. Tr. 288. On February 2, Hegar reported to Dr. Reiser headaches three to four times per week not alleviated by amitriptyline or gabapentin. She was swimming three times a week and taking lyrosine with some pain relief. On February 24, Hegar had diffuse muscle pain "without trigger points," and intermittent weakness. Tr. 286-87, She had no regular exercise routine. On March 25, Hegar reported a headache with left side fatigue for which she received an injection of Kenalog. Tr. 285.

On March 26, 2010, Hegar filed her application for disability benefits because of "multiple sclerosis, migraines, anemia." Tr. 187.

On May 28, 2010, Dr. Oksenholt saw Plaintiff for diffuse muscle pain, irritation, abdominal pain, anxiety, and headache. Tr. 429. Her depression was improved. In June, neurologist Andrew Rontal, M.D., evaluated Plaintiff for non-specific weakness over the past year, mostly in both lower extremities lasting from 30 minutes to three hours. Tr. 248. She had numbness and tingling in all extremities, and intermittent blurred vision. Dr. Rontal opined that Hegar did not have multiple sclerosis, and would benefit from an increase in propranolol. Tr. 251. He thought "the most likely cause of her symptoms is fibromyalgia (FM), but we will refer back to her PCP for proper [work up] and management of this diagnosis." *Id.* Dr. Rontal did not test Plaintiff for FM.

In June 2010 Hegar reported fatigue, blurred vision, abdominal pain, muscle aches, headaches and depression. Tr. 280. She was advised to lose weight. In July 2010, Hegar

Page 8 - FINDINGS AND RECOMMENDATION

established care with Marilyn J. Fraser, M.D.  Tr. 342.  She reported fatigue, weakness, and anxiety.  Dr. Fraser's diagnosis was "apparently fibromyalgia," and she referred Plaintiff to the FM clinic at Oregon Health Sciences University.  On August 4, Hegar reported fatigue, tinnitus, chest pain, shortness of breath, heartburn, nausea, muscle aches, cramping, back pain, headaches, tremors, vertigo and fainting.  Dr. Oksenholt recorded a depressed affect, with poor concentration and poor memory.  Tr. 268.  She was counseled about diet and exercise.

On August 17, 2010, Martin B. Lahr, M.D., reviewed the medical record and determined Hegar was not disabled.  Tr. 73-81.

On October 20, 2010, Dr. Fraser again referred Plaintiff to the FM clinic.  Tr. 335.  On December 9, Plaintiff reported constant pain all over.  Tr. 256.  She was taking propranolol, Lonox, Zocor, hyoscyamine sulfate, Ultram, aspirin, protonix, zithromycin, darvocet and oxycodone.   Her muscle strength was 5/5.  She was counseled to follow up with a neurologist, exercise regularly, and diet.  Hegar saw Dr. Fraser on the same day and was counseled to see a rheumatologist.  Tr. 438.

On December 13, 2010, Plaintiff requested reconsideration of the agency's decision.  Tr. 104-06.

On February 22, 2011, Sandra L. Lundblad, Psy. D., and Neal E. Berner, M.D., reviewed the medical record and denied Plaintiff's request for reconsideration.  Tr. 84-94.  Plaintiff requested a hearing on March 9, 2011.  Tr. 109-11.

On June 1, 2011, Dr. Oksenholt noted Plaintiff had quit taking all of her medications.  Tr. 376.  She was advised to see a rheumatologist, exercise, and diet.  Tr. 380.  On July 20, Plaintiff reported pain all over, and told Dr. Oksenholt she had an appointment with a rheumatologist in

September, but there is no evidence that she kept that appointment. Tr. 371. In October,

Plaintiff was advised to see a rheumatologist, lose weight, and exercise. Tr. 368. On February 2,

2012, Plaintiff denied using methamphetamine but admitted smoking marijuana. Tr. 361.

## B. The Hearing Testimony

On May 3, 2012, a hearing was conducted before an ALJ in connection with Hegar's

application. Tr. 33-72. Hegar, her counsel, her daughter, and a vocational expert were present.

Tr. 34.

Hegar testified that she is unable to work because she is "in a lot of pain a lot of the time.

My headaches do prevent me, my migraines, from even doing simple things too sometimes. I

can't stand for very long. I do have arthritis." Tr. 43-44. She explained that she thought she had

multiple sclerosis (MS) when she filed her application, but the MS specialist said she did not

have MS and told her she has fibromyalgia.

Hegar said she has nerve and arthritic pain in her back, arms, neck and head. Tr. 44. Her

feet hurt sometimes. Standing or sitting too long is difficult. Her legs "have given out on me."

*Id.* She has carpal tunnel syndrome in her right wrist.

Hegar stated she was in the emergency room a few days before the hearing with a

migraine that had lasted for a week and a half. Tr. 45. Her legs were weak and she was shaking.

Her headaches cause her to see spots or mirrored images. Her FM pain started six to eight years

ago. Tr. 46.

She testified that she has never worked full-time for an entire year. *Id.*   Hegar stated that she lost a number of jobs because of her migraines.  She received iron infusions for anemia three times a week for two months which made her sick and triggered further migraines.

Hegar stated that she has adverse reactions to many medications.  She was currently taking Lomotil for diahrrea and hydrocosamine for gastrointestinal pain and cramping.  She takes the hydrocosamine several times a week, as needed.   She has a problem with a vertebra  in her neck.

She experiences sudden onset of fatigue and weakness with shaking and pain in her elbows, knees, back and neck.  Tr. 53.  Hegar testified that her hands, elbows and neck swell with burning or shooting pain.  She gets "a shooting pain like from my neck to my arms ro my back down my legs or up towards my neck." Tr. 54.  Her feet swell and her hands swell so she "can barely move." *Id.* This occurs at least once a week.  She tries to swim for exercise but it makes her head hurt.  She gets a headache when she exercises or moves too much.  Tr. 55.

Hegar testified that she watches television and talks on the telephone.  She does not read very much because it can cause or increase her headache.  She sits to wash dishes and fold clothes. Tr. 56.  She can fold clothes for a couple of hours.  Hegar said she naps a couple of days each week.  Tr. 57.  When she has a headache she takes Tramadol which makes her tired.

She has been referred to the rheumatologist and fibromyalgia center at Oregon Health Sciences Center, but she has not gone because the clinic is in Portland and she lives in Lincoln City, and her car is not reliable.  Tr. 58.

Christine Hegar is Plaintiff's daughter. She sees her mom about three times a week. Tr. 60. She has seen her mother's wrists and face swell. Christine Hegar thinks her mother has bad headaches more than twice a month. Tr. 61.

On June 12, 2012, the ALJ issued a decision finding Plaintiff not disabled. Tr. 20-28. Hegar requested review of the ALJ's decision, Tr. 14-16, and the Appeals Council denied her request on January, 24, 2014. Tr. 1-5. In consequence, the ALJ's decision of June 12, 2012, became the Administration's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

### SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law Judge found that Hegar did not engage in substantial gainful activity at any time following her claimed disability onset date of October 15, 2008. Tr.  22 . He therefore proceeded to the second step of the analysis.

At the second step, the ALJ found that Hegar's medical impairments of headaches and a disc extrusion at C6-7 with mild narrowing of neural foramen were "severe" for purposes of the Act. *Id.* Because the impairments were deemed severe, the ALJ properly proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Hegar's impairments was the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 23. The ALJ therefore properly conducted an assessment of Hegar's residual functional capacity. Specifically, the ALJ found Hegar had the capacity to perform light work, except she is able to perform postural movements on an occasional basis, is able to lift 10 pounds frequently or occasionally,

stand and/or walk for two hours of an eight hour workday, and sit for six hours of an eight hour

workday.  When sitting, she must be able to to change positions every 90 minutes with no change

in work productivity.  She is able to stand for no more than 60 minutes at a time, or walk for no

more than ten minutes at a time.  She is restricted from temperature extremes, humidity, fumes,

odors, chemicals and solvents. *Id.*

　　At the fourth step of the five-step process, the ALJ found that Hegar had  past relevant

work as a housekeeper, retail sales clerk, home health care giver, and restaurant hostess.  Tr. 27.

At step five, the ALJ relied on the testimony of a Vocational Expert (VE) and determined there

were jobs in the national economy that Hegar can perform, including table worker, hand stuffer,

and sorter.  Tr. 28.  On that basis, the ALJ concluded that Hegar was not disabled as defined in

the Act at any time after March 26, 2010, the date the application was filed.  *Id.*

## ANALYSIS

　　Hegar argues that the Administrative Law Judge improperly (1) failed to find

fibromyalgia a severe impairment at step two; (2) improperly rejected Dr. Oksenholt's opinion;

(3) failed to credit Hegar's own testimony regarding the severity of her symptoms; and (4)

improperly rejected lay testimony.

## I.  Step Two

　　At step two, the ALJ determines whether the claimant has a medically severe impairment

or combination of impairments.  *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987).  The Social

Security Regulations and Rulings, as well as case law applying them, discuss the step two

severity determination in terms of what is "not severe."  According to the regulations, "an

impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do

Page 13 - FINDINGS AND RECOMMENDATION

basic work activities."  20 CFR § 404.1521(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 CFR § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 US at 153-54.  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  *See* SSR 85-28; *Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988) (adopting SSR 85-28).  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone.  20 CFR § 404.1508.

At step two, the claimant bears the burden to show the existence of medically determinable impairments that have more than a minimal effect on his ability to perform work-related activities.  20 C.F.R. § 404.1520(a)(4)(ii); *Tackett v. Apfell,* 180 F.3d 1094, 1099 (9th Cir. 1999); *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007).

At step two, an impairment can only be established "if the record includes signs–the results of 'medically acceptable clinical diagnostic techniques,' such as tests–as well as symptoms, *i.e.,* [Plaintiff's] representations regarding his impairment."  *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir. 2005)(quoting Social Security Ruling (SSR) 96-4p, *available at* 1996 WL 374187, at *1 n.2).  The existence of an impairment requires a diagnosis.  Symptoms alone are insufficient.  *Ukolov,* 420 F.3d at 1005-06.  Only acceptable medical sources may diagnose and establish that a medical impairment exists.  20 C.F.R. § 416.913(a); SSR 06-03p, *available at* 2006 WL 2329939, at *2.  "Thus, regardless of how many symptoms an individual alleges, or

how genuine the individual's complaints may appear to be, the existence of a medically

determinable physical or mental impairment cannot be established in the absence of objective

medical abnormalities; *i.e.,* medical signs and laboratory findings." SSR 96-4p, at *1.

Social Security Ruling 12-2p governs the evaluation of fibromyalgia. In fibromyalgia

cases, more than a diagnosis from an acceptable medical source is required. "We cannot rely

upon the physician's diagnosis alone. The evidence must document that the physician reviewed

the person's medical history and conducted a physical exam." SSR 12-2p at *43641. A

diagnosis of fibromyalgia must be supported by an application of the appropriate diagnostic

criteria in the physician's medical records before the Social Security Administration can

recognize the diagnosis. Based on the 1990 American College of Rheumatology Criteria for the

Classification of Fibromyalgia, those criteria include: widespread pain documented in all four

quadrants of the body; eleven out of 18 trigger points, and repeated manifestations of six or more

fibromyalgia signs, symptoms, or co-occurring conditions. *Id.* At **43641-43642.

The ALJ found fibromyalgia was not a severe impairment because the ALJ asserted the

diagnosis was "not based on objective testing," and because swimming and medications were

helpful in alleviating Plaintiff's symptoms. Tr. 23. The ALJ also asserted that Plaintiff's failure

to see specialists in Portland because of transportation issues "strongly suggests that she is able to

manage her daily activities despite the pain." *Id.*

Hegar argues that Dr. Rontal, a neurologist, diagnosed fibromyalgia in June 2010. Dr.

Rontal found Plaintiff did not have multiple sclerosis, and said "[t]he most likely cause of her

symptoms is fibromyalgia, but we will refer back to her PCP for proper [workup] and

management of this diagnosis." Tr. 251. There is no evidence Dr. Rontal performed specific

Page 15 - FINDINGS AND RECOMMENDATION

tests for fibromyalgia, including examining Plaintiff for trigger point tenderness, or that he noted

any other abnormal findings on examination to support a diagnosis. Tr. 248-52. Dr. Oksenholt

noted "diffuse pain suggesting fibromyalgia" and listed that diagnosis, but there is no evidence of

the required examination findings. Tr. 22-23, 256, 272, 371. Dr. Oksenholt noted that Plaintiff

was seeing Dr. Fraser for fibromyalgia treatment, but Dr. Fraser opined that fibromyalgia was

"likely," and referred Plaintiff to the FM clinic at Oregon Health and Science University. Tr.

266, 542. Dr. Fraser did not record examination findings to justify the diagnosis. Tr. 541-42.

The ALJ did not err in finding fibromyalgia was not a severe impairment at step two and

this determination should be affirmed.

## II.    Medical Opinions

An ALJ may properly reject a treating physician's uncontradicted medical opinion only

for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995).

When the treating physician's opinion has been contradicted, however, it may be rejected for

"specific and legitimate reasons that are supported by substantial evidence in the record."

*Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This can be done

by setting out a detailed and thorough summary of the facts, providing an appropriate

interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th

Cir. 1989).

Dr. Oksenholt opined in May 2012 that Plaintiff was unable to sit, stand, and walk for

eight hours in an eight hour work day. Tr. 535. He estimated Hegar would be absent from work

due to her impairments about one day per month. Tr. 536. The VE testified that an inability to

sit, stand, and walk for a combined total of eight hours in a work day would preclude the ability

Page 16 - FINDINGS AND RECOMMENDATION

to perform full-time work. Tr. 66-67. The VE also testified that absences at the frequency

described by Dr. Oksenholt would be disabling. Tr. 67-69.

The ALJ addressed Dr. Oksenholt's opinion:

> I have given this opinion great weight to the extent that the claimant
> does require additional environmental limitations and a sit/stand
> option. However, I assign little weight to the exertional restrictions
> as a whole; Dr. Oksenholt has apparently based his opinion on symptoms
> consistent with multiple sclerosis, which she does not have, according to
> testing. He expected this condition to get worse, as this is the disease
> process of multiple sclerosis. However, she appears to have maintained
> her status, or at least has not decompensated to the extent that she is
> unable to treat with medication and swimming.

Tr. 26.

The Commissioner contends that Dr. Oksenholt's opinion is contradicted by the opinions

of two non-examining state agency reviewing doctors. But the reviewing doctors based their

assessment of Plaintiff's functional limitations on the same diagnoses, records, and test results

relied upon by Dr. Oksenholt. The only conflict between the treating doctor and the reviewing

doctors is the extent to which Plaintiff is limited. This is not a true "conflict" and not sufficient

to allow the ALJ to provide less than clear and convincing reasons to reject Dr. Oksenholt. *Orn

v. Astrue,* 495 F.3d 625, 631-35 (9th Cir. 2007).

The Commissioner contends that the ALJ's reference to multiple sclerosis is harmless

because Dr. Oksenholt's opinion is based on the theory that Plaintiff has fibromyalgia, which is

not documented with the requisite findings.

The ALJ did not articulate clear and convincing reasons to reject Dr. Oksenholt's opinion.

**III.    Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis:  the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree

of symptom.

*Smolen,* 80 F3d at 1282.

As set out above, Hegar has failed to produce objective medical evidence of fibromyalgia, but there is objective medical evidence of headaches and a cervical spine issue.

The ALJ found Plaintiff not fully credible as to the intensity, persistence, and limiting effects of her symptoms to the extent they are inconsistent with the residual functional capacity assessment. Tr. 25-26. The ALJ properly noted the lack of objective findings to support her report of limitations. Tr. 25. The ALJ found Plaintiff's assertion that she cannot walk very far due to pain and weakness contradicted by her demonstrated normal gait and station at every examination, and her assertion that she walked to her doctor appointments. Tr. 45, 90, 216, 243, 251, 312, 314, 330, 341, 450, 452, 502, 505, 542. This is a valid reason to find Plaintiff less than fully credible.

The ALJ noted Plaintiff had significant relief from her headaches with adjustment of her medications. Tr. 25. The ALJ found Plaintiff's activities conflicted with her claims of debilitating pain. Plaintiff's activities included swimming, light cleaning, caring for her mother, personal hygiene, basic food preparation, driving, sewing, talking to friends and family, going out to meals, and attending church every Sunday. Tr. 212-16.

The ALJ's determination that Hegar was not fully credible as to the extent of her pain and limitations is supported by clear and convincing reasons and substantial evidence and should be affirmed.

**IV. Lay Testimony**

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Hegar's daughter testified as set out above. The ALJ did not mention the testimony. However, this error was harmless "where the testimony is similar to other testimony that the ALJ validly discounted." *Molina,* 674 F.3d at 1119.

## V. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court

may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart,* 340 F.3d 871, 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

On this record, the court should remand this matter for further proceedings. There are outstanding issues that must be resolved, including whether Dr. Oksenholt's assessment of functional limitations is based on a valid, documented, diagnosis of fibromyalgia. The ALJ should be directed to reassess Dr. Oksenholt's opinion in light of the above findings.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be reversed and this matter should be remanded for further administrative proceedings.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge. Objections, if any, are due fourteen (14) days from service of the Findings and

Page 21 - FINDINGS AND RECOMMENDATION

Recommendation.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 1st day of June, 2015.

Honorable Paul Papak
United States Magistrate Judge